You've reserved 3 minutes for rebuttal, so that gives you 7 minutes out of the gate. You may proceed. Thank you. My name is Martin Vogelbaum. I'm from the Federal Public Defender's Office in the Western District of Newark. And I represent the Appellant, Mr. James Tracy. As the Court knows, we've raised only a single issue once. Counsel, could you pull up the microphone, please? Of course. As the Court knows, we've raised only a single issue once. Now you're in stereo. We've raised only a single issue on this appeal, which is the Court imposed a suspicionless search condition, a supervised release, containing no requirement that a search be plenicated on reasonable suspicion, containing no requirement that a search be evaluated reasonably related to the supervisory duties of the probation office, and containing no requirement or prohibition, I should say, on arbitrary, capricious or harassing searches. So, I mean, that issue has been briefed before in another case. I don't know if it's your office or not that's bringing that up. So I guess we'll see what is said about that one. But, I mean, isn't this a case, though, where one could infer from the record, from the nature of the charges, from the fact that he had prior convictions involving child enticement or child pornography, child enticement, really, I think, that this is someone who certainly needs this kind of a search requirement because he instructed people to destroy evidence before. He was using Sarah Petit's Facebook communications. There was a lot of deceit associated with this crime. What I would say to that, Your Honor, is that I don't— I didn't raise an individualized sort of finding argument or an individualized assessment argument in this case. It was precisely that reason I agreed with the court, that if that's the kind of argument that we're making, that the record here would bear out exactly what the court said. But the argument here is quite a different one, which is simply the categorical argument, that there cannot be, under either the totality of the circumstances, law enforcement rubric or under the special needs analysis— But can I interrupt you? I mean, I want to make sure I understand what you're saying. So are you saying that if the judge had said what I just said, then the judge could have imposed this search requirement? No. I apologize to be confusing. Our position is that there are no circumstances under which a judge can impose a search requirement that doesn't have some kind of substantial triggering evidentiary predicate to it. I mean, that's inconsistent with existing Second Circuit case law, right? In the case of New York State parole officers, we've already said that generalized search requirements are okay, right? Well, I think in some cases the court has read that more strongly than others. For example, if you think of Bragg's most recent legal partnership,  he's in a very strong position that rationally and reasonably related to the performance of supervisory duties is something quite different than reasonable suspicion in the legal sense. But I think that the vast majority of the court's precedents— in fact, the court does find some kind of evidentiary predicate, whether it's reasonable suspicion or simply reasonable suspicion. And I think there's a good reason for that. Even under the special needs analysis, what is required of the government is to take the approach that is minimally intrusive and maximally effective. And additionally, with the requirement of a rational and reasonable relationship, the duties of the probation officer under those circumstances. It seems to me that all of those things imply some kind of informational trigger for this urgent issue. Otherwise, what you would have is essentially a regime where, in fact, probation officers could search on the way. But isn't that, in fact, the law of the circuit? Long ago, a whole generation ago, we upheld validity of home visits by probation officers for those on supervised release without requiring reasonable suspicion. For no reason at all. They just pop in because it's a surprise visit. And that was 2002 in our court. And I think the Supreme Court followed up with a similar decision involving a California search. I mean, we've dealt with this long ago. Well, I had the case, Your Honor, of referring to Reyes. And, of course, I don't disagree with respect to the home visit. But, of course, Reyes also points out that home visits are far less intrusive phenomena than an actual probation search is, what we're talking about here. And even in Reyes, the ultimate search that is done is conducted only after the probation officers in that case take a little trip down the side driveway and see marijuana plants. Samson, the Supreme Court decision was a suspicionless search, wasn't it? It was. However, what I would say in relation to Samson and in relation to the last point is that I don't think it's fair to say or accurate to say that even in the absence of a reasonable suspicion requirement, a special needs analysis has dispensed with any sort of informational predicate that we have in the discretion of the probation officer. And I don't think that Samson permits that result. It is important in Samson and, in fact, a descendant to Justice Thomas writes a paragraph refuting or rebutting the defense in the dissent in Samson by saying that your concerns about a suspicionless search leading to arbitrary, that is to say baseless, suspicious, or purely veracity searches is misplaced because alongside the very law that authorizes these suspicionless searches  So I don't think it's a misplaced jurisprudence. Can I ask you how plain error overlays here? So I think it's Olivares that's the case ahead of you on this issue. If Olivares comes out exactly as you hope it does, we still have to ask whether it was plain error here in the context of Samson and Reyes and Lifshitz and every other circuit to consider the issue and the guidelines. All of these things. So what's the argument then that it is plain error? Well, that is, I will announce an argument.  I don't think, I understand the government overwhelming discussion to it. I'm not so sure that the guidelines are the most important thing in terms of the plain error question. So, okay, every other circuit, Supreme Court precedent, Second Circuit precedent. Well, I believe there are three other circuits, if I'm not mistaken, that have authorized suspicionless searches and then I think there are also three other searches that have queued to a reasonable suspicion standard. Well, but they haven't really addressed this specifically, though, right? I think perhaps a more appropriate way to say it is they've never addressed it. They've never addressed a case dealing with a suspicionless search. And so having endorsed it one way or another and continued to have a reasonable suspicion. But, yeah, even with the Supreme Court case dealing with Samson, you know, I would point out, first of all, that's a plurality and we make an argument in our brief, and hopefully we're here, that supervised release is much more similar to probation. Yeah, I mean, Lipschitz presents a problem for that because it talks about a spectrum and it puts supervised release at the most severe end. And that's, of course, that stip, which arguably it is because I'm not clear that Lipschitz comes to any different results, notwithstanding that stip. And I would also point out about Samson, in addition to the prohibition on arbitrary repercussions and harassment searches, I think the regulation in that case is properly rivaling the claim of the person, not the parolee. I think that's how it reads. And so I think that a live issue in this case, as well, is self-embarrassment. Conceivably, you could have different variations of privacy, even in the context of supervised release, that attach to different places. Typically, the home, of course, is the unit of privacy applications. And I don't see any reason why that shouldn't be the case in the context of supervised release or parole or probation, as it is for any other citizen, albeit a professional. All right. Will you reserve some time for rebuttal? We'll now hear from Ms. Lee. Good morning, Your Honors. My name is Tiffany Lee, and I represent the United States. I think this case rises and falls on what they already do. And as your questions of ranking it kind of suggest, it cannot be said that it is a plain failure for the district court to impose this special condition of supervised release. Certainly, in the legal landscape that we are currently under, pending a decision in Aljuberez, certainly with the cases that this court has issued in Reyes and in Braggs, and more importantly, with San Jose, California, we have a legal landscape which suggests that when we're dealing with individuals who have a diminished level of privacy interest at stake, certainly this court has said in dicta and also following leaderships in cases such as Reyes and so on, that in the continuum of privacy interest, a person on supervised release has the least amount of expectation of privacy. And that is because, as Stamson also recognizes, a person on supervised release, that punishment is in addition to the period of incarceration. As a distinguished probationer who has not spent a single day being incarcerated, it's almost like his incarceration has been deferred during that period of probation subject to his over-successful condition of probation. It's more akin to someone who's on parole who has been released early from the period of incarceration. Counsel, can I ask, is it the government's view that we should wait for Aljuberez because how that's decided will impact at least how we consider the plain error question? I don't think it's necessary to wait for Aljuberez because of the fact that the question here right now is, is it an error at this point? Is it clear? Is it obvious? Or anything along those lines. And certainly in Aljuberez, there was more of an argument vis-a-vis the discretion that the district were exercised in that particular case. Aljuberez also involved a drug defendant and that issue was preserved. Here, we are dealing with an individual who is convicted of a sex offense where in the guidelines they do recommend a special condition that involves, implicates a suspicionless search to the extent that a search is, a warrantless search is allowed so long as the probation officer is executing the search in his or her lawful district duties. So, given that we have, I want to frame them suggesting that this type of special condition is permissible in cases such as Tracy, whereas in Aljuberez, it was not recommended, I feel that the plaintiff on the issue could swornly be decided today. And so, I don't see the necessity to wait for the determination of the Aljuberez court. Well, Aljuberez was argued almost six months ago, so it presumably won't be too long a wait. And that certainly... He's an optimist. This court obviously has its discretion to determine whether to wait or not to wait. I'm just advocating not to because it's clearly not a plain error. So, it's not plainly obvious that an issue court here wouldn't impose this type of condition on a lawyer in a reasonable situation. The contention that in this context we apply a relaxed plain error rule, you don't view it as that sort of context? I don't view it in that sort of context only because this court is... I understand it's sentencing, but here... Sentencing and the inclusion of this changed over time and... It did. It did. And certainly, again, this court, the government understands that it's a more relaxed sentencing and under these circumstances, there was a series of events that had happened in terms of the PSR. But when this court imposed its sentence, and up until the final PSR, none of them were really subjected to these special conditions of supervised release. And when this court imposed its sentence and read out exactly what the special condition was, no one said, wait a minute, oh, I can dispute this is obvious error. No one is saying anything about reasonable suspicion. Well, he's a registered sex offender as well. Does the record reflect what sort of search requirements, if any, there are associated with that? There's... In essence, the search condition that was imposed was that he shall submit to a search of his personal property, vehicle, place of residence, or any other property under his control and prevent the confiscation of any evidence or content. That's the condition imposed by the district court. Right. I'm asking a slightly different question. I mean, there's also state obligations that he's under. But is there a search requirement associated with the state's sexual register? All right. Thank you, Ms. Lee. Mr. Vogelbaum, you've got three minutes for rebuttal. With respect to whether he should waive all affairs of the PR position, that that would be the thing to do, in part because, bearing on the plain error question, I'm probably going to misremember the name of the case and part of my question is that there's a case called Functions that says error is plain if it's plain at the time of appeal. So if this court ultimately decides all affairs in our favor, conceivably that might impact the court's view of the plain error question in this case. Secondly, with respect to nobody making an objection here, I do think that this is a case where it would be appropriate to apply the last plain error review. There were six versions of the PSR in this case. The first four of them all had a proposed special condition. The search condition was activated upon reasonable suspicion. Those three words. It was only in the last two that those three words were omitted and the only notice that was given to the parties was a generalized statement in the addendum to the PSR that the proposed changes of special conditions were not fully accepted and they changed in some fashion without pointing out which condition or what change was or anything of that nature. You're talking about a page and a half worth of dense special conditions. I mean, it is then read verbatim at sentencing. So you have it. You notice of a change, some change. You have it in the final version and then it's read without reasonable suspicion at sentencing. That's true. I understand the court's point, but on the other hand, again, we are still talking about only three words upon reasonable suspicion, which are really easy to miss even if you're listening at sentencing. Maybe you're not. Maybe you're not really expecting it. And I think there's also the more general principle here that, you know, the Mata case out of this court says that notice should be sufficient and adequate and I don't know why necessarily certainly that's counsel and government's responsibilities to read the thing, but I don't know why there isn't some onus on probation to provide more adequate notice than there was given in this case. Were you counsel in the district court? I was not. And finally, just with respect to a few notes on supervised release being more similar to parole, I really, really strongly take the position that is not the case. This business of supervised release being imposed in addition to the incarcerative sentence, that's certainly true, but I don't think it necessarily follows from that. That somehow makes supervised release a more severe animal than parole or probation. Parole, after all, is the extension of a prison sentence. Technically, the person is still in custody. Am I wrong? Isn't that what Lifshitz... You're saying it's dicta in Lifshitz. So you're making an argument even though Lifshitz contains that dicta and arguing it's dicta. That's right. That's essentially wrong. And, of course, looking back at the legislative history and its consequence, this was enacted in response to the truth in sentencing laws of the sentencing reform act, the fact that many incarcerated sentences got longer, and Congress saw a need for not an additional punitive device at the end of these longer sentences, but saw the need for a device that would be no rehabilitative nature and that would ease re-entry into society, which is precisely why until the Anti-Drug Abuse Act of several years later, supervised release violations were very rarely punished, and when they were, they had to be prosecuted as contempt of court rather than the quasi, almost administrative process that we have today. Thank you. All right. Thank you both. Well argued. Well reserved decision.